Good morning. Michael Petrick, Federal Defenders for Mr. Smith. Good morning. May it please the Court. Your Honors, I think the facts of this case bear out that what the California Highway Patrol did in this case was they performed an exploratory search of the Camaro before probable cause attached to arrest Mr. Smith, before they arrested him. And that's just the type of search that is illegal under the search incident to arrest doctrine. Officer Ratcliffe testifies that immediately upon Price returning from the Camaro, where he talked with the co-defendant in this case, he went to the Camaro to look for evidence of Mr. Smith's identification. And that is the violation. Officer Price bears this out. He testifies that during the search occurred during his search, he was conferring with California Highway Patrol dispatch about driver's licenses and social security numbers and trying to identify Mr. Smith. And he was badgering Mr. Smith into trying to admit who he was. Why didn't he have probable cause as soon as it became apparent that he was giving a false name to the officer when they got the radio answer that the name that your client gave the officers matched a different description, physical description of, you know, somebody else? Why wasn't there probable cause right then and there to arrest him? Well, I think that there's not probable cause. And then you have to go to the officer's state of mind. He himself... No, no, no. Forget the officer's state of mind. Why isn't there probable cause when the officer learns that the driver of the vehicle has just given him a false identity? I think, well, I think that the first time he confers with dispatch is when he's got the vehicle and he's going to the Camaro. Now, he may get some information from dispatch, but that is inconclusive evidence, and he's not... The guy says my name is Vernon Smith and here's my address and social security number, whatever he gave him. The cop goes and runs Vernon Smith and that number, that name, comes back and it's obviously not him. Well, I think, no. I think, I beg to differ, Your Honor. I think at that time he gets the information about Vernon Smith and he gets no information back from California Highway Patrol dispatch. That's why he goes to talk to the co-defendant in the Camaro. They didn't get, didn't your guy tell the police officer his name was Vernon Smith? Yes. And didn't he give a social security number for Vernon Smith? The second, the second conference with dispatch is when he gave the social security number. Okay, and then dispatch comes back and says Vernon Smith doesn't look anything like this guy. Exactly, but... Okay, why isn't, why isn't there probable cause right then and there to arrest him for giving a false information to the police? Assuming there is, at that point, Officer Ratcliffe has already gone back to the Camaro because when he, when Officer Price gets the information from dispatch the first time, the first information from dispatch is inconclusive. That's why he goes to the Camaro in the first place. He comes back, the second time he's conferring with Mr. Smith again, he's getting, trying to get more information from dispatch. And Officer Ratcliffe testifies that immediately upon Price's return back to the patrol car where Mr. Smith is standing and he's watching him, on a hunch, because the whole question is identity, Ratcliffe goes to the Camaro to search for the identification. And he goes into the Camaro and he finds it. But that search occurs before probable cause attaches, even in this case, I believe. And that's why the search is illegal. And I think that testimony is borne out by Price's testimony. He testifies that the during his investigation of the identity, the second time he was conferring with dispatch, Price testifies twice that Ratcliffe went to search the car. Price testifies twice later on that the search occurred definitely before he arrested Mr. Smith. So I think that the violation is, is at the inception when Ratcliffe returns to the Camaro to search for identification on a hunch. And we know he is going there on a hunch because he says that. At 148-6, why did you go back to the Camaro? And his answer is just based on the way he was acting and what have you. He went back there on a hunch. And that's why the California Highway Patrol violated the Fourth Amendment in this case. I would also argue that the Court asked the parties to address the recent Supreme Court case, United States v. Thornton. And I think that that case is distinguishable. And for the same reasons, Rawlings is distinguishable. In both of those Supreme Court cases, there was clearly probable cause to arrest. In Thornton, the officer had already discovered controlled substances. So he definitely had probable cause to arrest Thornton and then search the automobile incident to it. In Rawlings, the officers had developed probable cause to arrest. And even though they, as the government says, there's no formal arrest, they could do searches to it. But here, the government cannot show where probable cause arose. And, Your Honor, I just urge you, there was no probable cause, the first dispatch information that Price received because that information was inconclusive. Smith gave a name of Vernon Paul Smith. It could not be confirmed or found to be untrue. That's why Price went to the Camaro in the first place. And there's still no probable cause to attach there. Let me, I'd like to ask you to respond to something because it hasn't been addressed by anybody. Why wouldn't the items that you wish to have suppressed be admissible under the inevitable discovery rule? Well, I think my first response to that is the government's, the government hasn't used that as a theory to get this evidence. I realize that, but you are well aware that we can affirm on any basis supported by the record and law. Well, I think that there's case law in this, in this circuit that says if the government doesn't raise it, then they've waived it. But I would also say that there was no ruling below on that. There was no ruling below that on I-8 in the middle of the night that the government would have inevitably discovered this information by the district court. The district court certainly ruled that later on, back when the California Highway Patrol transported the Camaro and Mr. Smith and Ms. Cottle back to their highway patrol station, that the search they performed there was not pursuant to any inventory search. So I don't think it would be inevitable to be discovered there. And that ruling is not disturbed. Can I add, I just want to ask, what is the, in your arguments, what is, if any, is the point of difference in the factual scenario? Or am I correct that the factual scenario is clear, it's just that the legal, the application of law to that scenario is being fought over, whether it's a valid automobile search or a search incident to arrest. Do you have any real factual dispute here about what happened and the timing? Well, I think the best way to answer that question is to look at the record, Your Honor. And I would say no, at risk of being accused of misstating the facts by the government. But I think there is no factual dispute in this case. I think it's not in dispute that the first time Price conferred with dispatch, there was inconclusive evidence as to identity as to Mr. Smith, and that Ratcliffe definitely testifies. And I could give you the citation. It's page 147 of the excerpt, lines 13 through page 148.1, that immediately upon Price returning from the Camaro, he went to search. And he went there because, you know, well, maybe it's in the car, I'm going to go look. And he thought that he had the right to do that, and he doesn't under the Fourth Amendment. They were very suspicious, and the government tries to argue that that amounted that suspicion amounted to probable cause. What more would be required, in your view, to have those suspicions transformed into probable cause? Well, I think they would have to have at least some kind of information that they have in complete contradiction to what Mr. Smith is saying to them on the side of the highway. And that doesn't occur until after Ratcliffe goes back to the Camaro. I don't think reasonable suspicion – this is, you know, I mean, they may have reasonable suspicion to inquire further based on inconclusive evidence, but they have no probable cause based on inconclusive evidence. And that's borne out by the case law, and that's borne out by the officer's actions themselves. That's why they went to the Camaro in the first place, to talk with the co-defendant. Do you want to save a half a minute for rebuttal? I'll save half a minute for rebuttal. Thank you very much. Good morning. Good morning, Your Honors. May it please the Court. My name is Kevin Mulcahy, and I represent the United States in this matter. I think the most important portion of this case and what this case turns on is the moment in time when probable cause to arrest Mr. Smith attached. And we have a distinct snapshot, the moment, a freeze frame in time when this occurred. And that is when Officer Price is sitting in his patrol unit, and he is receiving the information, whether it was on a screen is unclear or whether it was just told to him, about Mr. Smith, the Vernon Smith that he had just run the records for. And at this time, Officer Ratcliffe and Defendant Smith are outside the vehicle, outside the patrol unit, between the patrol unit and the Camaro. At this time, when the officer says, Vernon Paul Smith's birthday is 1970 and 1971, and Vernon Paul Smith is six feet tall, and he has brown eyes, and he weighs 200 pounds, when Officer Price receives this information and looks at the defendant, that, at that moment in time, he knows he has been lied to by this defendant about the defendant's identity, and there is probable cause to arrest him. And Officer Ratcliffe, and there is no dispute about this, is not at the Camaro at this time. So that snapshot in time is when probable cause. Isn't there a dispute about that, though? I mean, the way I was interpreting the facts, that, yes, okay, the moment in time that Ratcliffe, I'm sorry, Price, got the Social Security number, which proved to him, at least, that Smith was lying about his identity. At that very time, Price was in the car searching for evidence of identity. And the case law seems pretty clear that you cannot search for the evidence that's going to prove the crime for which you're being arrested, that that's exactly what the Fourth Amendment prohibits. Correct. And so this was happening simultaneously in this case. I disagree, Your Honor, in the sense that when the information came back from dispatch, Officer Ratcliffe was not in the Camaro. He was standing with Defendant Smith. And Officer Price was in his patrol unit receiving this information. And at that moment in time, Officer Price had probable cause to arrest. And it was after that, after that, you're saying that after that is when Price went in to go search the car? I think you mean Ratcliffe. Ratcliffe, sorry. No, that's okay. It's sort of an interesting factual pattern. Yes, it was after Price received. It was not at the same time. It was after. And this is borne out. So why didn't they arrest him first and then go search the car? I believe they didn't arrest him first and go search the car because they wanted an admission from him that this wasn't who he was. They wanted to go back and do further information. And I think that's clear. They indicated that they went back, or Officer Price indicated he went back and confronted the defendant and said, this isn't you. I mean, these are distinct differences. And the defendant says, well, you know, I lost some weight. And they have this sort of back and forth. At that point, he certainly could arrest him, but in his judgment, I believe he wanted to get further information from the defendant so the defendant could do exactly what the defendant did, which was admit, yes, I'm lying. And, in fact, the defendant admitted it was using his brother's identity. What I think is really important here, and I will disagree with Mr. Petrick, and I certainly won't say he's misrepresenting the record. I think we do have a disagreement factually in that Mr. ---- Officer Ratcliffe did go to the vehicle while Officer Price was talking to Defendant Smith. But he did not go immediately. And I cite and I ---- Your record says that. My record cite is Excerpts of Record, and it's essentially 145 through 147. And in that area, 145 through 147, Officer Ratcliffe discusses or testifies about the conversation that he had with Defendant Smith about these discrepancies. So Officer Ratcliffe couldn't have gone immediately to the vehicle because he knows or he had this conversation with Smith. He couldn't have had a conversation with Smith about information discrepancies excuse me, about identity discrepancies if he had gone directly to the Camaro and not learned of the discrepancies that Officer Price had learned in the vehicle. I'm puzzled by your use of the term go to the car because I don't think it matters if he went to the car. I'm concerned about whether he went inside the car and started searching or using the term synonymously. I am, Your Honor, and I apologize for that. When Officer Ratcliffe went in to search the passenger area of the vehicle, at that identity discrepancy, and that's testified to an excerpt of record 145 through 147. And what this shows is that Ratcliffe was not in the vehicle searching for the wallet simultaneously while Price was running the second records check in that the records check based on a social security number. So what essentially what happened here is at the moment in time, the freeze frame moment in time, when the officers had probable cause to arrest, Ratcliffe had not searched. And because that search did not occur before the arrest, but rather after probable cause to arrest attached, then this is a valid search under the search instance to arrest option. Are you familiar with our decision in U.S. v. Par? Yes. All right. How do you distinguish that? I am. I will say I'm familiar with it, although I don't have it in front of me. And the way I distinguish that is my understanding of that case, and again, I don't have it in front of me, is that case is more akin to the Knowles case, Supreme Court. The Knowles case is more akin to the Knowles where, and it's cited by, I know by Mr. Petrick in there, in one of the 28 J letters, but essentially those are cases with regard to search incident to. A traffic stop. It was a traffic stop. Correct. It wasn't a full-blown arrest. Correct. And that's what makes this case different is government certainly concedes that had Mr. Smith not lied about his identity and had he not committed this crime, they couldn't have searched. They could have given him a speeding ticket and went on their way. And I think that's what makes this case distinguishable from both Parr and Knowles. Mr. McKay. Yes, sir. We're supposed to carry identification, driver's license with us on our person. Correct. Smith has stopped and he doesn't have any identification on his person. Correct. Did that give authority to the officers to search the car to see if there was such identification in the car? I think the question that comes before, my answer to your question, sir, is I don't know. The reason I say that is because. Let me ask you then the next question. Okay. And that is the arrest occurred after the search of the car. I think in Belton the arrest preceded the search. Correct. And we have case law to the effect that as long as the arrest is contemporaneous with the search of a person, it doesn't matter whether the search occurs before or after the arrest as long as it's in close, it's contemporaneous. Do we have law to the effect that as long as the search of the automobile occurs contemporaneously, it makes no difference whether the arrest precedes or succeeds it? I don't know of a case that indicates. Is this it? I think this may be. This may be that case. And I don't think that there is an important distinction between the two in the sense that Belton came, grew out of Heimel or Camel that indicated that for the same reasons why officer safety and destruction of evidence, the same reasons why we need a search incident to arrest doctrine outside of a vehicle, we need one on the inside of a vehicle. And I think the cases have been consistent in that the rationales are the exact same for whether you're inside a vehicle or whether you're inside a house. And I think Thornton really underscores that as well in the sense that Thornton says even when an individual got out of the vehicle before the officers contacted them, so he was never even at his vehicle or he wasn't inside the vehicle at any point when the officers contacted him, that Belton rule still applies. And I think sort of building on those analysis and the spirit of those cases, there isn't a distinction between the search incident to what I'll call probable cause to arrest as opposed to actual arrest, and that's the Rawlings situation, and the search incident to probable cause to arrest in a vehicle. So I don't think that there is a distinction there under all the rationales of the line of cases that we're talking about here. Roberts. There's also an issue in this case of the district court reconsidering its previous order granting the motion to suppress. Right. And the question is whether the district court must predicate that reconsideration order upon one of the, I think it is, five factors that Alexander mentions and relying on the Bishop case, I think. And then we have some civil cases that say the district court can always reconsider. How do you – how do we approach that issue in this case? Your Honor, I think in this case the judge was certainly within her right to reconsider her ruling. Her ruling had not become final in the sense that it had not been appealed. There had been – there had been a hearing that occurred without the benefit of briefing search incident to arrest doctrine, which I think really hamstrung the court below. And it was only after this error was related, where this error was briefed by both parties, that the court really saw the error that it had made and reversed itself. And I think the reason why a motion to reconsider is justified in a case like this is one for judicial economy. A court – a district court should have the right to correct its own errors. And the case of Baykeeper that Your Honor has asked us to – You know, that's – well, we could have the Beekeeper or whatever. There's a Baykeeper case and all those cases. Go along with that. But Alexander and the Bishop case, I think, is – boy, they're pretty strong the other way. So what do we do? Do we pick one or the other? Or do we have to? No, I think when we look at the facts of Alexander – Do we have to ban the decision to reconsider within one of the Alexander factors for exercise of discretion? Well, I believe we can. But I also think there – more importantly, I think we can look at what happened in Alexander and see that these cases are like apples and oranges. In Alexander, there was a decision made by the district court. The government sought a motion to appeal, changed its mind and didn't have the appeal. The case went on towards trial, was eventually remanded, I believe, if I'm getting the facts corrected. Now, there was a failure to reach a verdict, I think. Correct. At that point, the trial court, Judge Conte then reconsidered. Right. Sort of changed judges and then reconsidered. And this is a – essentially all the way along the lines in – through the trial, the parties are working under this set of facts, this set of rules, this set of decisions. And now all of a sudden after a jury couldn't reach unanimous verdict, the rules and the changes and decisions changed. That was not the case here. This was simply an unbriefed issue that came before the court that the court took the time to reconsider before anything else happened in the case. This was the next thing that happened in this case. All I have to say is that as a former district court judge who reconsidered many times, this was news to me that there was a role against it. But you're over your time. Thank you, Your Honor. No, no. I just want to ask you to respond to one question. I apologize to the other judges. But it does seem to me that the facts of this case fit under the inevitable discovery role, yet the government never briefed or argued it. And that perhaps we have some law that says although we can affirm on any ground, it's not appropriate to do so if the defendant never had a chance to challenge or to submit evidence. What is the government's position on that doctrine? The reason why the government didn't rely on the inevitable discovery doctrine is it was our understanding that if the arrest had been made of Mr. Smith solely for the false identification information and none of the counterfeit documents were found, that Ms. Connell would have taken the vehicle and gone away. I see. And that's where we didn't rely on it. The documents wouldn't necessarily have been inevitable, although the identification itself was. Correct. And so there wouldn't have been a – I guess the point is all the information that we learned or all the false evidence, the evidence of the forgeries and the counterfeit bills, we learned as a result of the money being pulled out of the wallet and being searched, and sort of the jig was up, and we have a counterfeiting scheme going on here. Before that, it was just a man who was lying about his identity and I think Connell would have driven away with the car and we would not have discovered that. Why would Connell have driven away with the car without the search of the car having occurred? My understanding is that the officers, once they had found the – Because if they're going to arrest him, then they have the right to do a search incident to the arrest of the passenger compartment of the car. Correct. And I guess my point is I don't – we didn't rely on the inevitable discovery doctrine because we weren't confident that in that search of the compartment of the car to find identifying information, which is what their goal was, they were going to find these bills, even though it turned out that they did. I don't understand that. I mean, if you're going to arrest them, then they have the right to search the car. They would have found the wallet. Then they would have had the same problem with what to do about the money, and then you're off and running again. I mean, I don't – I certainly think we could have made that argument. I guess that's the reason why we did not make that argument, and I certainly think that there's an argument to be made there. Thank you very much, Mr. Mulcahy. Mr. Pietrebek, you had about 30 seconds left, but we'll give you a little more time because you went over. I think – I do disagree with Mr. Mulcahy about the sequence of events in this case, although I think that the Court can look to the excerpt. We both identified almost the identical part of the excerpt. And what happened in this case is simply this. There was – Christ found inconclusive evidence of identification with his first contact with Mr. Smith at the patrol car. He went to confer with the co-defendant in the Camaro. At that time, Radcliffe was watching Mr. Smith back by the patrol car, and that's when the conversation occurred about what's your identity between Smith and Radcliffe. Then Christ comes back. He still has inconclusive evidence. And he starts conferring with dispatch about driver's licenses in Arizona and California and Social Security numbers. That's when Radcliffe testifies. He immediately went to the Camaro and went into the Camaro to look for identification. And Christ wasn't in his patrol car typing it up on a computer or anything. He was right there on the roadside conferring with dispatch with his shoulder radio. He would never – I would think no California highway patrol officer would let someone that they've stopped for speeding or any other crime just sit there on the side of I-8 in the middle of the night while he went back in his car and his officer was not watching him. So I think that's the crux of the facts that the court has to decide, and I would urge you to decide in Mr. Smith's favor. Thank you very much. I would submit the other issues on the briefs. Thank you. Thank you, gentlemen. The case just argued is submitted. 0250412, United States v. Castillon, is submitted on the briefs, as is 0350349 and 50585, United States v. Klein. That case is submitted on the briefs. The last case, then, to be argued today is 0355858, Rubin v. Pringle. Each side has 20 minutes.
judges: Thompson, Silverman, Wardlaw